UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EDWARD MALATINKA,            )<br>          Plaintiff,          )<br>                                   )<br>     v.                            )<br>                                   )<br>TOM GOLFIS, ET AL.,           )<br>          Defendants.         )  | CAUSE NO.: 2:02-CV-196-PRC |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 37], filed by Defendants Tom Golfis and the City of Hammond ("Hammond Defendants") on September 17, 2004, and a Motion for Summary Judgment [DE 33], filed by Defendant Teamsters Union Local 142 ("Union" or "Local 142") on September 17, 2004.  For the following reasons, the Court grants the Hammond Defendants' Motion for Summary Judgment and grants in part the Union's Motion for Summary Judgment.

**PROCEDURAL BACKGROUND**

On May 8, 2002, the Plaintiff, Edward Malatinka, filed his Complaint in this Court.  On September 1, 2004, after receiving leave of Court, the Plaintiff filed his Amended Complaint, alleging (1) breach of employment contract and of the duty of fair representation under section 301[1] of the Labor Management Relations Act; (2) violation of his rights to political association and free speech under the First and Fourteenth Amendments to the United States Constitution and the Indiana

---

[1] The Plaintiff's Complaint and Amended Complaint both refer to "section 210 of the Labor Management Relations Act."  The Court assumes that this is a typographical error, as there is no such section, and § 301 of the LMRA is the section which provides for suits by and against labor organizations for violation of contracts between an employer and labor organizations as defined in the LMRA.  *See* 29 U.S.C. § 185.

Constitution and 42 U.S.C. §§ 1983, 1985, and 1988; and (3) breach of contract, breach of agency relationship, and breach of fiduciary duty under Indiana state law.  On September 7, 2004, Defendant Local 142 filed its Answer to the Plaintiff's Amended Complaint, and on September 20, 2004, the Hammond Defendants filed their Answer

On September 17, 2004, the Hammond Defendants filed their Motion for Summary Judgment and supporting materials and the Union filed its Motion for Summary Judgment and supporting materials.  On November 9, 2004, the Plaintiff filed a Joint Response and Memorandum in Opposition to Defendants' Motions for Summary Judgment.  On November 22, 2004, the Hammond Defendants filed their Reply, and on November 23, 2004, the Union filed its Reply.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND[2]

The Plaintiff, a resident of Hammond, Indiana, was employed in the Street Department by the City of Hammond for nearly twenty years, from July of 1982 until March of 2002.  The Plaintiff began his employment with the Street Department in July of 1982.  He joined the Union in September of 1982.

Between January 27, 1999, and August 7, 2001, the Plaintiff received thirteen reprimands, twelve for failing to report absences in a timely manner and one for leaving the work site during

---

[2] The facts are viewed in the light most favorable to the Plaintiff, as the nonmoving party.  To the extent that the statement of genuine issues submitted by the Plaintiff makes arguments or legal conclusions, uses hearsay to support an assertion, or sets forth statements which do not raise genuine issues of material fact, those statements have not been incorporated into this factual background.

working hours.  Of the thirteen reprimands, the Plaintiff signed only three.  His signature indicated that he agreed with the reprimand.

The Plaintiff alleges that he became "politically active" as a Democrat when Democrat Tom McDermott became the Mayor of the City of Hammond in 1984.  The Plaintiff did not support Dedelow, McDermott's successor, who was a Republican.  Instead, he supported a Democrat who ran against and lost twice to Dedelow.

The Plaintiff claims that his working conditions changed when Tom Golfis succeeded Ken Townsend as Street Commissioner in 1999 or 2000.  After a few months, the Plaintiff went from a front-end-loader operator to sweeping bridges, picking up paper, cleaning roads, and sickling grass.  His job title did not change.  According to the Plaintiff, he did not have any problems at work before Golfis became the Street Commissioner.

Tom Golfis initially dismissed the Plaintiff as a result of a reprimand dated August 7, 2001.  After his dismissal, the Plaintiff filed a grievance with the City of Hammond.  On October 16, 2001, the Union representative, Carl Vonasch, negotiated the Plaintiff's reinstatement with the City of Hammond.  The City of Hammond agreed to reinstate the Plaintiff to his original position prior to termination.  He was placed on a one year probation with regard to the issue of failing to report absences in a timely manner.  The Plaintiff and the City agreed that if the Plaintiff violated the failure to report rule during the one year period, he would be immediately terminated.

On October 20, 2001, the Plaintiff submitted an application for family/medical leave because of a rotator cuff injury.  The terms of the Federal Family Medical Leave Act ("FMLA") were incorporated into the City of Hammond personnel policy.  The policy provided the employee with a medical leave of twelve weeks.  The Plaintiff's medical leave under the FMLA commenced on

October 22, 2001, and terminated on January 11, 2002.  He was due to return to work on January 14, 2002.  However, he had previously submitted a Medical Certification Statement completed by his physician which indicated that he could return to work on January 21, 2002.  Although his medical leave expired, Golfis granted him an additional seven days of leave, to January 21, 2002.  The Plaintiff did not return to work on January 21, 2002; instead, he submitted a note from his physician on January 24, 2002.  Golfis gave the Plaintiff an additional thirty days of medical leave.  On February 22, 2002, Golfis received a note from the Plaintiff's physician which stated "no work until further notice."  When the Plaintiff did not return to work on February 21, 2002, Golfis again gave the Plaintiff an additional thirty days of leave, from February 21, 2002, to March 21, 2002.  These additional medical leaves were extended to the Plaintiff despite the fact that the Plaintiff failed to request the additional leave as required by the City's Personnel Policy.  The Leave of Absence Policy states in part that the "failure to report for work assignment at the return date specified in the leave will result in termination unless an extension is requested and granted."

The Plaintiff did not return to work on March 21, 2002.  Instead, he called in on March 22, 2002, to advise that he would return to work on March 25, 2002.  He neither requested nor received any additional medical leave beyond March 21, 2002.

On March 21, 2002, Golfis informed the Plaintiff that he was terminated because he "failed to appear for work or provide a written request for an additional 30 day leave with subsequent medical documentation."  On March 25, 2002, the Plaintiff filed a grievance against the City of Hammond pursuant to the Labor Agreement between the City of Hammond and Local 142.  On March 26, 2002, the Plaintiff brought the grievance to Golfis' office, but Golfis was not available.  The secretary, Jessica Wilkins, telephoned Golfis to ask whether she should accept the grievance.

4

Golfis told Jenkins to accept the grievance.

The union representative withdrew the Plaintiff's second grievance because the Plaintiff failed to follow the proper procedures and because it was determined that the Plaintiff violated his probationary status by failing to return to work in a timely manner.

The Plaintiff filed a final grievance on April 1, 2002. The union rejected his final grievance because he did not follow contractual procedures, he violated his probationary status by not returning to work, and the final grievance was redundant.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted); *see also Windle v. City of Marion, Ind.*, 321 F.3d 658, 660-61 (7th Cir. 2003); *Shanoff v. Illinois Dept. of Human Srvcs.*, 258 F.3d 696, 701 (7th Cir. 2001).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge his "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support his motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if he chooses, may support his motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on his pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for

6

trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

### A. The Hammond Defendants' Motion for Summary Judgment

In his Amended Complaint, the Plaintiff claims that he was fired by the Street Superintendent, Tom Golfis, in "furtherance of a Policy of Hammond to either fire or harass until they quit all employees who are not active supporters of Mayer Duane W. Dedelow of Hammond." The Plaintiff claims that the stated reason for his termination–that he failed to follow the policy and rules for returning from a medical absence–was "false and a pretext." The Plaintiff has sued Defendant Golfis in his personal and official capacities, claiming that Golfis and the City of Hammond violated his right to political association and free speech under the First and Fourteenth Amendments to the United States Constitution and the Indiana Constitution. However, in his response brief, the Plaintiff asserts that he is not complaining of violations of free speech. Rather, he argues that he is only claiming a violation of his First Amendment right of association.

7

Therefore, the Plaintiff has waived any claim in his Amended Complaint for a violation of his right to free speech and the Court will analyze the Plaintiff's claim against the Hammond Defendants as alleging a violation of his right to political association under the First Amendment.

Section 1983 provides that any person who acts under color of any state law and causes a citizen of the United States or other person within its jurisdiction to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States shall be liable to the party injured.  The Plaintiff alleges that his right under the First Amendment to the Constitution to participate freely in the political process was violated by the Defendants' conduct.

It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policy-making positions and for employees having a confidential relationship with a superior.  *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 71 n.5 (1990); *Hall v Babb*, 389 F.3d 758 (7th Cir. 2004).  To make out a prima facie case for this type of employment discrimination, a plaintiff must show two things:  first, that the Plaintiff's conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision.  *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 495 (7th Cir. 2002); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  It is not enough to show only that the plaintiff was of a different political persuasion than the decision-makers or the retained employee.  If a plaintiff can make the prima facie showing, the burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision.  *Hall*, 398 F.3d at 758.

The Plaintiff's chosen political activity–supporting a Democrat for Mayor of the City of

8

Hammond–was protected conduct. Therefore, the question becomes whether the Plaintiff's political affiliation was a substantial or motivating factor in his termination.

In this case, the Plaintiff has failed to present any evidence that Golfis is a Republican, except that he was appointed by Dedelow, who is a Republican. Even assuming Golfis is a Republican, that fact standing alone is insufficient to demonstrate that his political affiliation was a motivating factor in his dismissal. *See McMillian v. Svetanoff*, 878 F.2d 186, 190-91 (7th Cir. 1989). As set forth earlier, the burden of proving that the termination was motivated by political affiliation is borne, initially, by the Plaintiff. *Id*. The Plaintiff's subjective belief that he was terminated because of his affiliation with the Democratic Party does not raise a genuine issue of material fact in the face of the evidence presented by the Defendants. The Plaintiff has not presented any admissible evidence that Golfis fired him because he supported the Democratic Party. Conversely, the evidence presented demonstrates that the Plaintiff received a series of reprimands, was placed on probation, and was given one final chance to comply with the policy and rules established by the City of Hammond. He then immediately requested medical leave, which he was given in the full amount available under the FMLA. When his leave ran out, he again failed to return to work and he failed to follow the proper channels for requesting additional leave. At that point, the City of Hammond could have terminated his employment. However, even though the City was not required to do so, Golfis gave him an additional sixty-seven days of leave, until either March 21 or March 22.[3] It is undisputed that the Plaintiff failed to return to work by March 22, 2002. When he failed to return to work, Golfis had a legitimate basis for firing him and the

---

[3] The parties dispute whether the Plaintiff's leave was extended until March 21 or March 22. This dispute is of little consequence because the Plaintiff failed to return to work by either date.

Plaintiff's self-serving, subjective beliefs cannot override the legitimate reason provided by the Defendants.

Based on the foregoing, the Plaintiff has failed to offer sufficient evidence to demonstrate that his right to political association and free speech under the First Amendment to the United States Constitution was violated.[4]  Therefore, summary judgment is appropriate for the Hammond Defendants on the Plaintiff's § 1983 claim.

### B. The Union's Motion for Summary Judgment

The Plaintiff's Amended Complaint alleges the following claims against the Union: "breach of employment contract and of the duty of fair representation under section 301 of the Labor Management Relations Act" and "breach of contract, breach of agency relationship, and breach of fiduciary duty under Indiana state law." However, in his response to the Union's Motion for Summary Judgment, the Plaintiff asserts that "this case is not governed by section 301 of the LMRA." Pls. Resp. at 14.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of

---

[4] Likewise, the Plaintiff has failed to demonstrate, or even adequately allege, that his rights under 42 U.S.C. § 1985 or the Indiana Constitution were violated. As for any claim under 42 U.S.C. § 1985, the Court finds that the Plaintiff does not use the word "conspiracy" in his Complaint and does not specifically allege the "what, when, why, and how" of any purported agreement to deprive him of his constitutional rights. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000). Moreover, the Court has determined that the Plaintiff's First Amendment rights have not been violated, and, therefore, the Plaintiff cannot make the threshold showing he has been deprived of a right or privilege. *See Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). Accordingly, the Court grants summary judgment in favor of the Hammond Defendants on the Plaintiff's claim under § 1985. As for any claim under the Indiana Constitution, the Plaintiff does not specify in his Complaint which provision or provisions of the Indiana Constitution he is asserting Golfis or the City of Hammond has violated. Accordingly, to the extent that the Plaintiff has even alleged a claim under the Indiana Constitution, the Court grants summary judgment in favor of the Hammond Defendant's on the Plaintiff's claim under the Indiana Constitution. *See Hudgens v. Wexler*, No. 00 C 5216, 2005 WL 20373, * 9 (N.D. Ill. Jan. 4, 2005) (citing *LINC Fin. Corp v. Onwuteaka*, 129 F.3d 917, 922 (7th Cir. 1997) (finding that a plaintiff's failure to support a claim with either facts or legal argument may lead a Court to find that summary judgment is proper on that count).

factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24.  A plaintiff's failure to support a claim with either facts or legal argument may lead a Court to find that summary judgment is proper on that count.  *Hudgens v. Wexler*, No. 00 C 5216, 2005 WL 20373, * 9 (N.D. Ill. Jan. 4, 2005) (citing *LINC Fin. Corp v. Onwuteaka*, 129 F.3d 917, 922 (7th Cir. 1997); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).  Accordingly, because the Plaintiff has decided not to pursue his federal cause of action against the Union, summary judgment in favor of the Union is appropriate on the Plaintiff's federal claim under section 301 of the LMRA.

The Plaintiff's remaining claims against the Union are state law claims.  Section 1367(a) provides that the Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a) based on the Court's original jurisdiction of the federal claims brought by the Plaintiff in this case under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  There is no evidence of record that either the diversity or amount in controversy requirement of 28 U.S.C. § 1332 are met in this case.

Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction over a claim under § 1367(a) if the "district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In the Seventh Circuit, there is a presumption under § 1367(c)(3) that the district court will dismiss without prejudice supplemental state law claims following the dismissal of all federal claims over which the district court had original jurisdiction prior to trial.  *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additivies Co.*, 6 F.3d 1176,

11

1182 (7th Cir. 1993); *Malibu, Inc. v. Reasonover*, 246 F. Supp. 2d 1008, 1017 (N.D. Ind. 2003). "The period of limitations for any claim asserted under § 1367(a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).

In this matter, relinquishment of the state law claims in accordance with this presumption is appropriate. The remaining claims against the Union are a matter of Indiana state law, which ordinarily should be heard by an Indiana court. Although this case has been pending for some time, the record does not demonstrate that the parties have invested a substantial amount of time and effort in litigating the state law claims. Because this Order has disposed of all of the Plaintiff's federal claims, the Court will now dismiss the pending state law claims.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Hammond Defendant's Motion for Summary Judgment [DE 37]. The Court **ORDERS** the Clerk of the Court to enter judgment on the Amended Complaint in favor of Defendant City of Hammond and Defendant Tom Golfis and against the Plaintiff, Edward Malatinka.

The Court also **GRANTS in PART** the Union's Motion for Summary Judgment [DE 33]. The Court **ORDERS** the Clerk of the Court to enter judgment on the Amended Complaint in favor of Defendant Teamsters Union Local 142 and against the Plaintiff, Edward Malatinka, on the Plaintiff's federal law claim against the Union arising under section 301 of the Labor Management Relations Act.

The Court **DISMISSES without prejudice** the Plaintiff's remaining state law claims of breach of contract, breach of agency relationship, and breach of fiduciary duty for lack of subject matter jurisdiction. Pursuant to 28 U.S.C. § 1367(d), the Plaintiff shall have thirty (30) days from the date of this Order to re-file his state law claims in state court.

SO ORDERED this 8th day of April, 2005.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record